The statement of facts certified with the record, set forth the deed made by Creecy to the plaintiff, as it is stated in the before mentioned case; it is sufficient to say that it was executed to secure sundry debts of the bargainor, was dated the 15 September, 1829, proved at the term of Chowan County Court commencing the ensuing week, and the certificate of registration was dated 27 March, 1830.
To prove the execution of the deed, the plaintiff called Robert H. Smith, one of the attesting witnesses, who stated that on 15 September, 1829, he was requested by Thomas Benbury one of the cestui que trusts, to go to the house of Creecy, and attest the execution of a deed — that he went with Benbury and Dr. Matthias E. Sawyer, the other attesting (385) witnesses, and found there Creecy and William R. Norcum, the latter of whom was also a cestui que trust. That the deed was lying on a table in the room, that Norcum filled up some blanks in it, that in a short time Creecy went to the table and signed the deed, and the witness and Dr. Sawyer attested it. That the deed was left on the table, and immediately he and Dr. Sawyer withdrew, leaving Norcum and Benbury with Creecy. The witness further stated that the plaintiff was from home at this time — that he returned the latter part of the same week, and that he, the witness, neither saw nor heard anything more of the deed until the Tuesday following; which was the week of Chowan County Court, when he was called upon to prove it. Dr. Sawyer stated that Creecy, after he signed the deed said, "I acknowledge that to be my act and deed."
William R. Norcum was called by the defendants — upon his examination by the plaintiff, he stated that he and others of Creecy's creditors, among whom was Benbury, employed the plaintiff to draw the deed; that in a short time thereafter the plaintiff informed him that he was going out of town to attend the Superior Court of Washington, that the deed was drafted, and was in Benbury's possession for the purpose of being executed; that he, the plaintiff, was fearful that Benbury might be negligent and that he wished the witness would attend to its execution. That on 15 September, 1829, he, the witness, went with Benbury to the house of Creecy, where he found the deed, that he having filled up several blanks in it, Creecy signed and sealed it; that after the attesting witnesses had left the house, the deed was lying upon the table, for the ink to dry; that as soon as this was done he went to the table, saying to Creecy that he was going to Washington Superior Court, when he should see the plaintiff, and that he would carry the deed and hand it to him; that Creecy remarked, he, the witness, might *Page 316 
miss the plaintiff on the way, and thereby the deed might not get to the hands of the plaintiff in time; that he, Creecy, expected the plaintiff back that evening or the next morning, When he would himself hand it to him. The witness (386) also stated that Benbury was in an adjoining room nearly all the time he, the witness, was in Creecy's house; that he came into the room where the deed had been executed during the period which elapsed after the departure of the attesting witnesses, and the conversation above stated, and that they, the witness and Benbury, left the house together.
The County Court commenced on the next Monday, the 21st, and the minutes of Tuesday the 22d, contained the folowing [following] entry, "Deed of trust from James R. Creecy to Augustus Moore was exhibited in open Court, the execution of which was proved by the oath of Robert H. Smith, and ordered to be registered (withdrawn by Mr. Moore)."
The Clerk of the County Court proved that after the probate of the deed, he made the usual certificate, and was about to file it when the plaintiff asked for it, and took it away, saying that he would hand it to the Register. It was proved that the Register did not receive the deed between four and six weeks after its probate, that the Register was then in very bad health, and died in December following, leaving the deed among his papers, but unregistered, and that no successor was appointed until the ensuing March Term of the County Court. It was also proved that the Register was the clerk of the defendant Collins, and usually attended to his business, and that he had a short time after the deed came into his possession, handed the original to Mr. Collins for the purpose of having it copied.
The defendant Rascoe being the sheriff of Chowan, justified under a writ of fieri facias against the property of Creecy, in favor of the defendant Collins, tested of the second Monday of September, 1829.
Several points were taken for the defendants, of which it is necessary to notice only the following:
1st. It was contended that the instrument relied on as the deed of Creecy, was void as against them, because it was not registered within six months after its execution, as required by the act of 1820 (Rev. ch. 1037).
2d. That no valid delivery of the deed had been made (387) by Creecy prior to 22 September, the Tuesday of the County Court, at which time the lien of the execution in favor of the defendant Collins had attached. *Page 317 
His Honor instructed the jury that if the plaintiff within five or six weeks after the probate of the deed, delivered it to the Register for registration, and its registration was prevented by the ill health and death of the Register, and the delay of the County Court in appointing a successor, it should be considered as registered within due time, leaving the facts attending the execution of the deed to the jury, his Honor informed them, that if Creecy in the presence of the attesting witnesses and of Norcum, declared the instrument to be his act and deed, unaccompanied by any other declaration or act, at the time, manifesting that he was to retain the control and power over it until some future period, the declaration amounted in law to a delivery at that time; that if the jury should think that the fact of Creecy's declining to permit the deed to be taken by Norcum, and retaining it himself was, as he declared it to be, for the purpose of keeping it more securely until he could hand it to the plaintiff, his so refusing to surrender the custody of the deed, and retaining it in his own possession, did not do away the efficacy of his prior delivery of it, and that if the jury, should upon the testimony before them, come to the conclusion that the deed was not then delivered, it was for them to decide, upon the whole evidence, whether it was subsequently delivered before or after the teste of the execution.
A verdict was returned for the plaintiff, and the defendants appealed.
The case was discussed at great length at the last June Term, by Gaston
and Badger for the defendants, and by Iredell, Devereux, Bryan and Kinney
for the plaintiff, and was continued under advisement until this term.
This was an action of TROVER, brought by the plaintiff to recover certain slaves and other property, mentioned in an instrument of writing, purporting to be a deed of trust, made by Creecy to the plaintiff. The defendants pleaded the general issue, and on the trial took (388) five objections to the recovery of the plaintiff. I shall take notice of the charge of the Judge of the Superior Court only on two of the objections. First: whether the instrument which the plaintiff calls a deed of trust, ever was delivered, so as to constitute it a deed, or if it was, whether it was delivered at a time subsequent to the lien created on the property, by the teste of the defendant's execution. Secondly, whether the deed of trust under which the plaintiff claims, was registered in six months, as is required by the act of Assembly passed in 1820. *Page 318 
The Judge who tried the cause, in his charge to the jury, told them that the words made use of by Creecy, at the time he signed and sealed the paper, would in law, amount to a delivery of the deed. I cannot agree with him in this opinion. The delivery of every deed must be proved as well as the sealing of it, being an essential requisite to its validity. The deed, if delivered, is good from the time of the delivery, and not from the date expressed on the face of the instrument. A deed may be delivered by words, without any act of delivery by the grantor, as if the writing sealed lieth upon the table, and the feoffor or obligor, saith to the feoffee or oblige, go and take up the said writing, it is sufficient for you, or it will serve the turn, or take it as my deed, or the like words, it is a sufficient delivery. (2 Thos. Coke, 235.) But the words must be addressed to the feoffee or oblige, or some person for them. The words must amount to an authority or license, in the person addressed, to take possession of the deed, and a reception of the instrument by the person spoken unto, must follow the speaking of the words. Whenever the words evidence an assent in the feoffor or obligor to part with the writing as a deed, and at the same time evidence a willingness that the person spoken unto should take the writing as a deed, and a reception of the writing by the person addressed follows the speaking, then the words amount in law, to a delivery. In the present case, the words spoken by Creecy before the (389) witnesses attested the instrument, were addressed to the witnesses, and not to Norcum, the plaintiff's agent. If the words spoken by Creecy had been addressed to Norcum, the subsequent words and acts of Creecy, in refusing to let Norcum have the paper, destroyed the efficacy of the antecedent words. It does not appear that the paper purporting to be a deed of trust, was ever in Norcum's possession or power, or that it was intended he should receive it. It seems to me that there was not any delivery of the deed of trust, on the day it bears date, viz.: on 15 September, 1829. But say the counsel for the plaintiff, if there was not a delivery on the day the deed bears date, there was sufficient evidence in the cause for the jury to infer a delivery of the deed to the plaintiff, before the teste of the defendant's execution, which was on Monday, 21 September, 1829. The declarations of Creecy, that he intended to deliver the deed to the plaintiff as soon as he came to town, and that he was expected that evening or the next morning, and the evidence of Smith, that the plaintiff did come to town, the latter part of the week next before the week of the County Court, taken in connection with the fact that the *Page 319 
plaintiff had possession of the paper on Tuesday, in the succeeding week — all this evidence, say the counsel for the plaintiff, was sufficient to authorize the jury to find, that the deed had been delivered before Monday, the date of the defendant's execution. It is further contended on behalf of the plaintiff that as the jury have found the fact that the deed was delivered before the date of the execution, this Court cannot interfere with the verdict, and grant a new trial, nor disturb the judgment given thereupon, although the jury may have found contrary to the weight of the evidence, that belonged exclusively to the Superior Court that tried the cause.
It seems to me that there was evidence sufficient for the jury to have inferred, and so found, that the deed had been delivered. But I think there was no evidence that could authorize them to do more than barely to guess that it was delivered before the date of the defendant's execution. It appears to me that there was no evidence to establish the isolated fact that the (390) time of the delivery of the deed, was prior to the time of the issuing of the execution. There being no evidence to establish that point, the Judge should have directed the jury to have found for the defendant, and not have left it descretionary with them to give a verdict any way they might think proper. The onus of establishing the fact viz: of delivery of the deed before the teste of the execution lay on the plaintiff. (Dickson v. Evans, 6 Term, 60.) The other point in this case on which I deem it necessary to give my opinion, is, on the question, whether the deed having been left with the register in time for it to have been registered, is to be considered in law as registered.
The act of Assembly, passed in 1820, requires a deed of trust to be both proved and registered, in six months; or to be considered utterly null and void as against creditors and purchasers for a valuable consideration. The acts of Assembly usually passed every two years, giving further time to prove and register deeds and mesne conveyances, contain a proviso to the following effect, "nothing herein contained, shall be construed to exetend [extend] to mortgages, or to deeds or conveyances in trust." The Legislature has refused to give any further time to prove and register deeds of trust, than that contained in the act of 1820. If a deed of trust was offered to be read in a Court of Law, containing only a probate without a certificate of registration, could it be received? Could the person offering it, excuse himself for not having the register's certificate of registration endorsed on the deed, by alleging the fact that the register would not perform his duty, although the deed was left at his office a sufficient length of time to have enabled him to *Page 320 
have registered it? This is the question now, for us to decide. For I take it the actual registration of the deed by the new register after the six months had expired, was without authority of law and is a nullity. The register is certainly liable on his bond, to make good the damages that any person may sustain by his negligence and omissions. But is the deed in law (391) registered, by leaving it at the register's office a sufficient length of time to enable him to enroll it, before the six months had expired? The plaintiff contends that it is, and many cases have been cited from the English law books, of decisions upon the navigation acts, the annuity acts, the mortmain act, and the act for the enrollment of deeds of bargain and sale of freehold estates in land. Ridley v. McGehee,13 N.C. 40, and the decision of this Court, Moore v.Collins, 14 N.C. 127, have been cited. First, as to the ship registry act. A vendee of a ship in England must, under the statute of 34 G., 3, support his title by a bill of sale, or some written contract, but it is not necessary for the completion of his title that the bill of sale should be registered. When the ship is in port at the time of the sale, the law requires that the contract of transfer should be endorsed upon the certificate of registry, and a copy of the endorsement left with officer of the customs, at the port where the ship belongs, in a reasonable time after the transfer: and if the ship is at sea at the time the bill of sale is executed, that the vendee should within ten days after the vessel arrived in port, have the endorsement of the contract entered on the certificate of her registry, and a copy thereof delivered to the officer of the customs. Whenever the vendee of a vessel was able to show that he had taken a written transfer, and had complied with these provisions of the statute, his title was complete by the meaning of the Legislature, as is to be collected from the very phraseology of the 15th and 16th sections of the 34 G., 3 without his showing that the officers had made entries of the transfer, and memoranda or registration of the transaction in the books of his office, and sent a copy thereof, in the time prescribed to the commissioners of customs at London. The object of this statute was not to give notice of the transfer, or to prevent frauds upon creditors and purchasers, but to prevent foreigners participating in the tonnage and navigation of British vessels. The duties of the officer of the customs at the port, as well as the duties of the commissioners of the customs at London, as prescribed (392) by the 34 G., 3, are only directory. Their entries were not intended to constitute any part of the title of the vendee. (Hubbard v. Johnstone, 3 Taunt, 176; Health v. *Page 321 Hubbard, 4 East., 110.) I do not think that the cases cited, which have arisen under this statute have any bearing on the case now before the Court.
Secondly. As to the decisions upon the statute, 17 G., 3, c. 26, concerning the registration of the memorials of annuity deeds. This statute requires that the memorials shall be enrolled within twenty days from the date of the deed, and if it is not done in that time, the securities are avoided. The act requires that a particular roll shall be provided and kept on which such memorials shall be entered, and proceeds to enact that every such memorial shall be duly enrolled, in order of time as the same shall be brought to the officer, and that the clerks of the enrollments shall specify on the roll, the certain day, hour and time, in which the memorial is brought to the officer, and shall grant a certificate thereof when required. If a memorial of any annuity is carried into the office within the twenty days, and the clerk specifies on the roll the time that it is brought to the office, let the residue of the enrollment be completed when it may, the memorial enrolled shall be conclusive, and no averment or evidence, shall be received, to show that the date is incorrect,Garrick v. Williams, 3 Taunt., 540. The construction which the Courts have put on this statute, proceeds altogether upon the circumstance that the law requires the clerk of the enrollment to enter on the roll the day and hour the memorial is delivered into the office, and likewise from a disposition in the Courts to give to the act that operation intended by the Legislature. It was said by Chief-Justice Mansfield, that it might be impossible for the officers to put the entire enrollment of all the memorials on the roll every day, or even every month. Our act of 1820, has no clause directing the register to note in the books of registry, the day of the delivery of a deed of trust to the officer. A subsequent act passed in 1829, has required it to be done, but this case is governed by the act (393) of 1820. The Legislature in allowing the deed of trust to be proved and registered in six months, has given ample time. There is no danger to be apprehended of such a press of business in the office, as to deprive a party of the benefit of the act, if he uses ordinary diligence.
Thirdly. The statute of 27 H. VIII, c. 16, requires all deeds of bargain and sale for the conveyance of freehold estates in lands to be enrolled in six months after their date, or they shall have no effect. Mansfield, C.J., in delivering his opinion in the case of Garrick v. Williams, remarked that since 16 Elizabeth, the date of enrollment had been entered, and the Courts look to the roll only, and no further. He cites Hynde's case (4 *Page 322 
Rep., 71), and Gilbert on Uses. The same rule has been followed I suppose, as is laid down by the Courts, in the case, of the enrollment of the memorials of annuities. This explains the reason why we are unable to find any case in the books upon this subject.
No case can be found decided under the mortmain acts which throws any light on the subject. I think I may say there is nothing in the British authorities that can aid us in deciding this cause. We will advert to the decisions in this country. The case decided in Connecticut, and reported by Kirby (page 72), is in unison with the decisions of the British Courts under the annuity act. The law of that State requires the day when the deed is delivered to the registers, to be entered on the roll, and the Court would not permit parol evidence to be let in, to show a registration at a different day. In this State, there is Ridley v. McGehee, 13 N.C. 40. The principle decided by the Court in that case is very near being in point for the plaintiff in this. A majority of the Judges of the Supreme Court, when this case was before them at a former period, were of the opinion that the plaintiff had done all that the law required him to do. The Judge who delivered the opinion of the Court, rests the opinion on the ground that the Legislature had failed to provide an officer. The want of registration, he says, is not to be imputed to the grantee, nor ought the defendant to derive any benefit from the failure, because (394) the Legislature enacted the provision of registration for his benefit; and if through its omission, there was no register, he cannot complain. It appears to me that the Judge mistook the facts. The deed was proved on 22 September, 1829, and the register lived until some time in the month of December, in the same year. The deed was placed in his hands five or six weeks after the day it was proved in Court. The first point insisted upon by the plaintiff was that his deed had not been registered in six months, not because there was no register, but because it had been prevented by the negligence of the register without the default of plaintiff. Ridley v. McGehee, supra, is a case as it appears to me, that stands on its own bottom. I know of no authority either in the English or American adjudications to support it. What was heretofore done in this case, I consider rather as a breaking of the cause than having a binding effect on the Court in this its ultimate determination. After giving the case all the attention and research. I am able, I am forced to say, sitting in a Court of Law, that the Superior Court should not have permitted the deed of trust to have been read as evidence to the jury without *Page 323 
registration, and that leaving it at the register's office, under the circumstances stated, was not in law, a registration. The reason made use of by the member of this Court, who dissented from the opinion delivered when the case was here before, is so strong and cogent as to convince my mind, and forces me to decide for the defendant — What a Court of Equity would do, if the case were there, we are not called on to say.
I am of the opinion a new trial should be granted.