Trover for six slaves. The defendant admitted the conversion, and the only question was whether Warren Baldwin, under whom both parties claimed, had duly executed a deed of gift to the plaintiff.
To prove the execution of the paper, the plaintiff called one Toon, who swore, that on 21 November, 1842, the day the paper bears date, at the house of the said Warren Baldwin, he was asked by Baldwin to become one of the subscribing witnesses to the paper, which had been *Page 358 
previously drawn by one Wooten and was lying on the table; he assented; Baldwin then signed his name, the seal being already made, and got up to make room for the witness. The witness said to Baldwin, "Do you do this as your act and deed?" Baldwin replied, "I do." Whereupon the witness signed his name as a witness and left the paper on the table. The other subscribing witness then signed his name, the paper was left on the table, and the witness did not see it again until after Baldwin's death, when it was found in a trunk with Baldwin's deeds for land and other papers. Wooten swore (506) that Baldwin requested him to write a deed of gift for the negroes, saying that these negroes had come by his wife, and he had promised her to leave them to her brothers and sisters. The plaintiffs were his brothers and sisters. The witness accordingly wrote the paper. After Baldwin had signed it and Toon had become a witness, he also put his name as a witness, folded it up, and wrote on the back, "Warren Baldwin to Charles Baldwin and others — Deed of Gift," and dropped it on the table. He and Toon went away, leaving it on the table. He next saw the paper in Baldwin's trunk, after his death, which was on 20 December, 1842. After Baldwin signed his name he did not touch the paper in the presence of the witness. It remained all the time on the table except while the witness was folding it. Neither of the plaintiffs was present. One Mithin swore that a short time before the death of Baldwin, in speaking about his property, he said: "I am satisfied with the way I have disposed of the negroes; the deed of gift is in my trunk, and I wish you to deliver it to Charles Baldwin immediately after my death." One Taylor swore that Baldwin said to him, talking about his property some short time before his death: "I have given the negroes, which came by my wife, by deed of gift to her brothers and sisters, and did it by deed of gift to keep any fuss from being made after my death, and I wish them to take possession of the negroes at my death." The defendant offered no evidence, but moved the court to charge the jury that there was no evidence of a delivery of the paper.
The court charged that, to constitute a delivery, the law required the maker of a deed to part with the possession, by passing it to the donee or some other person, with an intent to make it his deed. If the maker thus parted with the possession for an instant, although he then took it back, still having made it his deed, it would remain so. But unless he did so part with the possession of the paper, an essential ingredient to constitute a deed was wanting; and although the jury were satisfied that Mr. Baldwin was under the impression (507) that the paper would be sufficient to pass the negroes after his death, as a deed of gift, yet if, in point of fact, the paper *Page 359 
had not been delivered so as to become his deed, the title did not pass to the plaintiff, and the defendant was entitled to their verdict. The plaintiff's counsel moved the court to charge the jury that there was evidence from which the jury might infer a delivery. The court declined so to charge, but, on the contrary, instructed the jury that it was necessary they should be satisfied from the evidence that Baldwin had, at least for an instant, parted with the possession of the paper and put it out of his control, with the intent that it should thereby become his deed; otherwise there would not be such a delivery as the law required.
There was a verdict for the defendant, and, judgment being rendered accordingly, the plaintiff appealed.
The only question in the case was whether Warren Baldwin, the owner of the slaves, ever delivered as his deed the paper-writing under which the plaintiff claimed them. It is admitted by the plaintiff's counsel that the signing and sealing of the paper-writing would not make it the deed of Warren Baldwin, but that delivery was also necessary. He contends, however, that what took place at the time the witnesses attested the paper, to wit, Baldwin's signing, sealing, acknowledgment and preservation of the paper, made it in law his deed and was tantamount to a delivery. Parkes v. Meares, 2 Bos. and P., 217, and Grillier v. Niel, Peak, 146, have been cited. In the first case the plaintiff's attorney had possession of the deed signed and sealed, and he asked the witness to attest it in the presence of the obligor, which he did. The witness also knew (510) the handwriting of the obligor. The court left it to the jury, upon this evidence, whether the defendant had not sealed and delivered the deed to the plaintiff's attorney, which in law would be a good delivery to the use of the plaintiff. In the second case the court held that the proof by the witness of the handwriting of the obligor was evidence to go to the jury that he also sealed and delivered it, and, there being nothing to the contrary, it was sufficient evidence. We think neither of these cases aids the plaintiff. In Jakes v. Methodist Church, 17 Johns., 548, the deed of marriage settlement was duly executed by the parties and laid on the table, and the wife, as cestui que trust, took it up and kept it in her possession for the trustee until her death. It was held in equity, under the circumstances of the case, to be a good and valid delivery of the deed. The contest was with the husband, Mr. Jakes, by those claiming under the deed of settlement, *Page 360 
which had been made agreeably to an antenuptial parol contract. And the husband had in a variety of instances acknowledged the validity of the deed; and he had been appointed by his wife executor to her will, and he had qualified and acted as such. The court said, after all these circumstances, they would not now hear him to allege that the deed had never been delivered to the trustee; so we see that case turned upon its own peculiar circumstances, and that it is no authority for the present plaintiff. In Garnons v. Knight, 5 Barn. 
Cress., 671, the lessor of the plaintiff claimed the property, as being the mortgage of Mr. Wm. Wynn, deceased. The mortgagor on one day signed, sealed and acknowledged the deed, and procured his niece to witness it. He did not tell her the contents of it, and he then took it away with him. On a subsequent day he went to the house of his sister, Miss Elizabeth Wynn, he brought to her a brown paper parcel, and said, "Here, Bess, keep this, it belongs to Mr. Garnons." He came again and asked for the parcel, and she gave it to him. He returned it to her, saying, "Here, put this by." He send word to Garnons that he would take care to make him perfectly secure for (511) all the moneys due from him. Miss Wynn received the said parcel, which contained the mortgage deed, and retained it until the death of her brother, which happened in August, and she then delivered it to Mr. Garnons. Baron Garrow, who tried the cause, told the jury that the question for them to decide was whether the delivery to Miss Wynn was, under all the circumstances of the case, a parting with the possession of the deed, and of the power and control over it, for the benefit of Mr. Garnons, and to be delivered to him either in Mr. Wynn's lifetime or after his death; or whether it was delivered to Miss Wynn merely for safekeeping as the depository, and subject to his future control and disposition; if for the latter purpose, they should find for the defendant; otherwise for the plaintiff. A verdict was rendered for the plaintiff. And a rule to show cause why a new trial should not be granted was obtained on the ground that there had not been a sufficient delivery of the deed. The court said: "Can there be any question, but that delivery to a third person, for the use of the party in whose favor a deed is made, where the grantor parts with all control over the deed, makes the deed effectual from the instant of such delivery?" The rule for a new trial was discharged. We see nothing in the above case to support the plaintiff's motion. For a delivery in that case had in fact been made to a stranger to the transaction, for the use of Garnons. In the case now before us Warren Baldwin did not deliver the paper to the plaintiff or his agent, or to a stranger for his use. And the case shows that he never intended to deliver it, or that it should in fact be delivered *Page 361 
in his lifetime; for he told a witness that the paper was then in his possession; and he requested that the witness should, after his death, take it from among his other papers and deliver it. The delivery of a deed, a transmutation of the possession, is an essential ceremony to the complete execution of it, and if Warren Baldwin had then delivered the paper writing to the witness, with a request that it should be delivered to the plaintiff after the death of the grantor, it would have been a good deed from the time of the (512) delivery to the witness. But he did not deliver the writing to the witness, and the parol authority given to the said witness, even if good in law to deliver a deed, was in law instantly revoked by the death of Warren Baldwin. It was argued that, although there was actually no delivery or parting with the possession of the instrument, yet it was operative as a deed, if the party intended it should be good without more doing. But that is inconsistent with the very definition of a deed, which is a writing sealed and delivered. The argument is that the deed shall be good without delivery if the party so intended, though the law says that delivery is essential to the constitution of that instrument. Such an intention cannot overthrow the rule of law. But, in truth, there was no intention that this instrument should presently operate, for the plaintiff's own evidence was that the grantor did not intend it should have any effect until after his death; and, as he retained the instrument until that event, no person could then deliver it. The plaintiff's counsel has labored this case very much, and he has cited many authorities, but they do not satisfy us that the judge who tried this cause erred in the law he laid down. Moore v. Collins,15 N.C. 384, supports him. Secondly, the plaintiff's counsel insists that the court should have left it to the jury to say, from all the evidence given in, whether the fact of delivery of the deed was proved to their satisfaction. The case does not show that the plaintiff offered any evidence tending to prove that fact. The Court might therefore say that there was no evidence on that point.
PER CURIAM. No error.
Cited: Roe v. Lovick, 43 N.C. 91; Newlin v. Osborne, 49 N.C. 159;Phillips v. Houston, 50 N.C. 303; Bailey v. Bailey, 52 N.C. 45;Levister v. Hilliard, 57 N.C. 15; McBee ex parte, 63 N.C. 334; Tarltonv. Griggs, 131 N.C. 221, 223; Wetherington v. Williams, 134 N.C. 281;Craddock v. Barnes, 142 N.C. 96; Fortune v. Hunt, 149 N.C. 360, 361;Buchanan v. Clark, 164 N.C. 63. *Page 362 
(513)